## OHIO FUEL CO. et al. v. McKAIN.

No. 12480—Opinion Filed Oct. 30, 1923.

Rehearing Denied Oct. 7, 1924.

**1. Trial—Province of Jury—Sufficiency of Plaintiff's Evidence.**

The rule is, that if there is any competent evidence offered upon the part of the plaintiff, reasonably tending to support plaintiff's cause of action declared upon in his petition, such evidence presents a question of fact for the jury.

**2. Same—Contracts—Damages for Breach.**

Where, in a suit for damages because of alleged breach of contract, the evidence is conflicting as to whether the plaintiff had tendered performance of his part of the contract, and as to whether the contract had been breached by defendants, the same presents a question of fact for the jury.

**3. Same—Appeal—Affirmance.**

Record examined, and held, that there is sufficient competent evidence submitted upon the part of plaintiff, that he was ready and willing to perform his part of the contract sued on, and that he tendered performance thereof, and that the defendants had breached the contract, resulting in injury to plaintiff, to require the submission of the matter to the jury, and to support the verdict and judgment for the plaintiff.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Grady County; Will Linn, Judge.

Action by A. C. McKain against the Ohio Fuel Company and Lone Star Gas Company for damages for breach of contract. Judgment for plaintiff, and defendants appeal. Affirmed.

Karl F. Griffith and Womack, Brown & Cund, for plaintiffs in error.

Bond, Melton & Melton, for defendant in error.

Opinion by SHACKELFORD, C. The parties will be referred to as plaintiff and defendants, as they appeared in the trial court.

On the 14th of February, 1920, the parties to this action made a contract, by which the plaintiff agreed to sell, and the defendants agreed to buy, certain oil and gas properties located in Caddo and Grady counties, Okla. The contract included leases upon certain lands described in the contract, together with certain oil well drilling equipment, and certain development for oil and gas already made.

The essential provisions of the contract are that plaintiff was to furnish merchantable title to the property which is described in the contract; that a hole had been drilled to a depth of 2,020 feet upon one of the leases described, and that a hole had been drilled on another lease to a depth of 2,140 feet, in which six and five-eighths inch casing had been set to a depth of 2,020 feet, and that the hole had not been plugged, and was in a condition that it could be drilled deeper; that the seller should immediately furnish complete abstracts of title for examination by attorneys for defendants, who should have ten days for examination, and if defects were discovered, plaintiff was to have 30 days to cure them, and if the defects could not be cured, the defendants, buyers, should have the option to declare the contract null and void. The buyers were to pay $80,500, for the properties as follows: $60,500 to be paid upon delivery of conveyances, and the balance of $20,000 to be placed in escrow in the Farmers' State Bank at Cement, to be paid to plaintiff in the event that the holes drilled were in the condition represented by the seller, and if so the said sum was to be plaintiffs, and if not, then to be returned to defendants. It was agreed that within 30 days the parties were, together, to ascertain if the wells were as represented.

Because of alleged defects in the title, and because one of the wells already drilled was not as represented, the defendants elected to exercise their option to declare the contract null and refused to perform the contract, and this suit followed. The suit was filed in the district court of Grady county in the 18th day of June, 1920. The plaintiff alleges execution of the contract of sale of property, and attaches a copy of the same, and alleges due performance upon his part, and the breach upon the part of the defendants, and resulting damages, amounting to the difference between the value of the property, fixed at $65,000, and the amount agreed to be paid by the defendants, or the sum of $15,500. The defendants filed separate general demurrers to the petition, which were overruled and

exceptions reserved. Thereafter the defendants filed their separate answers, denying the allegations of the petition. Later on the defendants filed a joint amended answer, denying all the allegations of the petition not expressly admitted. Then follows an admission of the execution of the contract. Then, further answering, they allege that upon investigation they found that one well referred to in the contract could not be deepened to the Gladstone sand, as had been represented in the contract, and that such representation was material and the principal inducement for making the contract. They, further answering, allege the duty upon the part of the plaintiff to furnish merchantable title to commercial leases, which he had failed to do, and further that he did not comply with the contract, and that they stood at all times ready, willing, and able to perform the contract when the plaintiff should perform his part thereof, and denying that the plaintiff had been damaged by reason of any default on their part. To this answer the plaintiff replied by way of general denial.

The cause was tried to a jury on the 31st of March, 1921, resulting in a verdict in favor of plaintiff in the sum of $15,000, and judgment was duly entered thereon. From this judgment the defendants appeal.

The defendants make some ten assignments of error, but content themselves with arguing them under five subheads, which we shall examine separately.

(1) Defendants argue that the court permitted the introduction of incompetent evidence on the part of the plaintiff. The contention is made that plaintiff was to furnish commercial leases, when in fact one of the leases offered was burdened with a drilling agreement; this being the one on which the well had been begun and drilled to a depth of 2,140 feet. The contract did not specifically provide that the leases were to be commercial leases. On the lease where the hole had been drilled there was a drilling contract made with the land owner, and defendants' attorney required that plaintiff obtain a release of the drilling contract. This could not be done, so it was arranged to place in the bank the sum of $10,000 to insure the completion of the hole according to the drilling agreement; and the plaintiff testified that Mr. Pratt agreed that this take the place of a release of the drilling contract. Mr. Pratt, it seems, was the officer of the Ohio Fuel Company who signed the contract of sale and purchase. It is contended that this testimony should not have been admitted for the reason that it tended to prove a waiver of conditions of

the contract, when no waiver had been pleaded, and for the further reason that it was not shown that Mr. Pratt had any authority to make the agreement. We think this testimony was not open to such criticism. Mr. Pratt, it appears, had joined in the original contract, as the representative of the Ohio Fuel Company, and the two defendant companies were acting together; and then, the testimony was not in any sense a waiver of any material condition of the contract. The attorney asked a release of the drilling contract, and plaintiff accomplished the same result by getting a guarantee that it would be performed. In effect, the same result was accomplished, and the testimony tended to show that Mr. Pratt agreed to it.

Again, it is contended that by the requirements of defendants' attorney, plaintiff should furnish receipts from the land owners for rentals or renewal payments on the leases. The plaintiff furnished deposit slips from the depository named in the leases' themselves. This was compliance with the contract, since it was substantial compliance with the requirement.

(2) It is argued that the court should have sustained the defendants' demurrer to plaintiff's evidence; and third, that the court erred in not rendering judgment for defendants when plaintiff rested his case. These propositions are, in effect, different ways of raising the question of the sufficiency of plaintiff's evidence. The rule is that if there is any competent evidence offered on the part of the plaintiff, reasonably tending to support plaintiff's cause of action declared upon in his petition, it is not then a question of law for the court, but a question of fact to be submitted to the jury. An examination of plaintiff's evidence tends strongly to show that plaintiff had made compliance with the contract, or was ready, willing, and able to comply with the contract, and was diligently endeavoring so to do. That being the state of case, it was not error for the court to overrule defendants' demurrer to plaintiff's evidence. nor to refuse to direct a verdict for defendants; nor to refuse to take the case from the jury and render a judgment for the defendants. Alva Roller Mills v. Simmons, 74 Okla. 314, 185 Pac. 76;; Danciger v. Isaacs, 82 Okla. 263, 200 Pac. 164.

(4) It is argued that the court erred in overruling the defendants' motion to strike from the record certain of plaintiff's evidence tending to prove a waiver of the conditions of the contract. We think that

overruling defendants' motion to strike the testimony of plaintiff, at which this motion was leveled, was not error. The testimony of plaintiff is not open to the criticism made. There was not a question of trying to show a waiver of material conditions of the contract sued on. It could hardly be treated as operating to prove a waiver in any sense. The testimony tended to show that plaintiff had met the requirements of defendants' attorney in a different manner than that pointed out by the attorney, and that defendants' representative had agreed thereto.

(5) It is argued that the court should have instructed the jury to return a verdict for defendants at the close of all the testimony. There was conflict in the testimony. The plaintiff's evidence was sufficient to warrant the overruling of defendant's demurrer thereto, and the refusal to direct a verdict for the defendants when plaintiff had rested. The evidence offered on the part of the defendants was in conflict with the plaintiff's evidence; but it was not for the trial court to weigh the evidence and to determine what part was true and what was false. When there is conflict in the testimony, the matter is to be determined by the jury upon instructions given by the court.

It is urged that there was one condition of the contract which plaintiff did not and could not comply with, which, in itself, would preclude a recovery in favor of the plaintiff. Plaintiff contracted that one of the wells already begun was down to a depth of 2,140 feet, and that casing was set therein to 2,020 feet, and that the hole was in condition so that it could be deepened to the level with an oil sand discovered in a well near by. It was provided in the contract as follows:

"Second party is obligated within 30 days from this date, to ascertain with the first party, or his representative, whether or not the two wells above referred to are in condition as represented by the first party. * * *"

The conditions as stated in the contract are:

"The first party has further represented to the second party that this latter said well is in condition to be drilled to a greater depth and that said well is not plugged and that by proper drilling said well can be completed to the lower sands in which oil and gas is found in what is known as the Gladstone well, offsetting this well to the east."

The proof upon this part of the contract

tended to show that some time during the 30 days, and without any reference to the plaintiff or any representative of his, defendants sent a drilling crew to see if the well could be deepened, and they ran the tools down to around 1,900 feet, and they would not go any farther, and from this they concluded that the hole could not be deepened, and advised the plaintiff that the sum of $20,000 was deductable from the contract price, as provided in the contract. On the part of the plaintiff it was shown that he, thereafter, put a drilling crew on the job, and the driller found a place in the hole where the tools would not pass, and that he then used a swedge on the casing and after a few hours work had removed the obstruction and the tools would go to the bottom and the drilling was continued.. We think there was not such a complete failure upon the part of the plaintiff to comply with his part of the contract as would preclude a recovery. Had defendants' reresentative taken the plaintiff or his representative when they went to investigate the hole, there perhaps would have been no trouble beyond the few hours work it took to swedge the casing so the tools would pass.

We have examined all the assignments of error made by the defendants, and have read most of the testimony of the witnesses, and have concluded that there is ample evidence in the record to make the matter a question of fact for the jury. And, we have likewise examined the instructions given by the court and find no error therein of such a substantial nature prejudicial to the defendants as would require a reversal of the judgment.

Finding no substantial error in the record prejudicial to the rights of the defendants, we recommend that the judgment be affirmed.

By the Court: It is so ordered.